DANIELLE L. SGRO, Pennsylvania Bar No. 313749
ERIC REY, D.C. Bar No. 988615
Trial Attorneys
U.S. Department of Justice, Civil Division,
Environmental Torts Litigation Section
175 N Street N.E.
Washington, DC 20001
Telephone: 202-616-4226
Fax: 202-616-4473
Email: danielle.l.sgro@usdoj.gov

SHEILA BAYNES, Montana Bar No. 37722843
DAVID MITCHELL, Illinois Bar No. 6302250
Trial Attorneys
U.S. Department of Justice,
Environmental and Natural Resources Division,
Environmental Defense Section

Attorneys for Defendant United States Air Force

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO WASTE SYSTEMS, INC., | |
| Plaintiff, | Civil No. 1:18-cv-229-BLW |
| v. | **DEFENDANT UNITED STATES AIR FORCE'S MOTION TO DISMISS COUNTS ONE THROUGH FOUR FOR LACK OF SUBJECT-MATTER JURISDICTION AND, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, AND, FOR SUMMARY JUDGMENT OF COUNTS FIVE AND SIX.** |
| THE UNITED STATES AIR FORCE; PROTECH COATINGS, INC.; and SNAKE RIVER RUBBISH, LLC | |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

FACTS ............................................................................................................................... 2

    I.    The Terms and Performance of the Contract ........................................................2

    II.    ProTech Confirmed It Would Adhere to the Contract Terms ...................................4

    III.    Project Waste Disposal at the Landfill Occurred
             Before ProTech Did a TCLP Test ...........................................................................4

STANDARD OF REVIEW ................................................................................................5

    I.    Motion to Dismiss, Fed. R. Civ. P. 12(h)(3) ..........................................................5

    II.    Motion for Summary Judgment, Fed. R. Civ. P. 56 ..................................................6

ARGUMENT .....................................................................................................................7

    I.    The FTCA's Independent Contractor Provision Deprives this Court of Subject
         Matter Jurisdiction over Plaintiffs' FTCA Claims (Counts 1–4) ............................7

         A.    ProTech Controlled the Day-to-Day Operations of the Project, and Thus
              Was an Independent Contractor for Whose Conduct the United States is
              Not Liable ....................................................................................................8

         B.    Plaintiff Has Not Alleged Direct Liability, and, Even if It Had, None
              Exists in this Case Because All Applicable Duties Were Delegated To
              ProTech ......................................................................................................10

    II.    In the Alternative, the Court Should Dismiss Plaintiff's Tort Claims For
         Diminution in Value and Consultant Expenses......................................................12

         A.    Plaintiff Has Provided No Evidence of PDG's Costs ...............................12

         B.    The Court Should Dismiss Plaintiff's Diminution
              in Value Claim..........................................................................................13

              1.    Plaintiff Did Not Suffer Any Losses Due to
                     Diminution in Value......................................................................13

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT              - ii

2.    Plaintiff Also Has Failed to Offer Any Admissible Evidence of Diminution in Value .......................................................................14

III.    The Court Should Enter Summary Judgment for the Air Force on Plaintiff's CERCLA Claims Because Plaintiff Has Failed to Make a Prima Facie Showing that Its Claimed Costs Were Necessary ...............................................................16

CONCLUSION ........................................................................................................................20

## TABLE OF AUTHORITIES

PAGE

Cases

*Adams v. United States*,
    823 F. Supp. 2d 1074 (D. Idaho 2011) ................................................................... 15

*Allen v. Veterans Admin.*,
    749 F.2d 1386 (9th Cir. 1984) .................................................................................. 1

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................................ 6, 7

*Artesian Water Co. v. Government of New Castle Cty.*,
    659 F. Supp. 1269 (D. Del. 1987) ......................................................................... 20

*Artesian Water Co. v. Government of New Castle Cty.*,
    851 F.2d 643 (3d Cir. 1988) ............................................................................ 17, 20

*Augustine v. United States*,
    704 F.2d 1074 (9th Cir. 1983) .................................................................................. 5

*Autery v. United States*,
    424 F.3d 944 (9th Cir. 2005) ................................................................. 8, 9, 10, 11

*Bayer v. Neiman Marcus Grp., Inc.*,
    861 F.3d 853 (9th Cir. 2017) ........................................................................... 13, 14

*Berkshire Fashions, Inc. v. M.V. Hakusan II*,
    954 F.2d 874 (3d Cir. 1992) .................................................................................... 5

*Burlington N. & S.F. R. Co. v. United States*,
    556 U.S. 559 (2009) .............................................................................................. 16

*Cadillac Fairview v. Dow Chem. Co.*,
    840 F.2d 691 (9th Cir. 1988) ................................................................................. 17

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
    270 F.3d 863 (9th Cir. 2001) ........................................................................... 17, 19

*Celotex Corp v. Catrett*,

477 U.S. 477 (1986) ................................................................................................................ 7

*City of Colton v. Am. Promotional Events, Inc.-West*,
614 F.3d 9983 (9th Cir. 2010) .............................................................................................. 17

*CTS Corp. v. Waldburger*,
573 U.S. 1 (2014) ................................................................................................................. 16

*Cunningham v. Masterwear Corp.*,
569 F.3d 673 (7th Cir. 2009) ............................................................................................... 15

*Curtis v. Firth*,
850 P.2d 749 (Idaho 1993) ............................................................................................. 13, 14

*Daigle v. Shell Oil Co.*,
972 F.2d 1527 (10th Cir. 1992) ........................................................................................... 20

*Diaz v. U.S. Postal Serv.*,
2003 WL 21767530 (S.D.N.Y July 31, 2003) ..................................................................... 10

*Edison v. United States*,
822 F.3d 510 (9th Cir. 2016) ........................................................................................... 8, 10

*Ek v. Herrington*,
939 F.2d 839 (9th Cir. 1991) ............................................................................................... 12

*Fraser v. United States*,
490 F. Supp. 2d 302 (E.D.N.Y. 2007) ................................................................................. 10

*Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003) ................................................................................................. 6

*Gillespie v. Travelscape LLC*,
No. C13-0622 RSM, 2014 WL 4243706 ............................................................................... 5

*Kane v. J.R. Simplot Co.*,
60 F.3d 688 (10th Cir. 1995) ............................................................................................... 11

*Kent Cty., State of Del.*,
918 F.2d 389 (3d Cir. 1990) ................................................................................................ 15

*Key Tronic Corp. v. United States*,
511 U.S. 809 (1994) ............................................................................................................. 17

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ........................................................................................... 6

*Laird v. Nelms*,
    406 U.S. 797 (1972) ..................................................................................... 5, 11

*Lentz v. United States Air Force*,
    2018 WL 3416993 (D. Ariz., 2018) ............................................................... 11

*Letnes v. United States*,
    820 F.2d 1517 (9th Cir. 1987) ...................................................................... 8, 9

*Logue v. United States*,
    412 U.S. 521 (1973) ......................................................................................... 8

*McGlinchy v. Shell Chem. Co.*,
    845 F.2d 802 (9th Cir. 1988) .................................................................... 12, 14

*Meghrig v. KFC Western, Inc.*,
    516 U.S. 479 (1996) ....................................................................................... 19

*Nelson v. Pima Cmty. Coll.*,
    83 F.3d 1075 (9th Cir. 1996) ........................................................................... 7

*Oldcastle Precast, Inc. v. Concrete Accessories of Georgia, Inc.*,
    2019 WL 403865 (D. Idaho Jan. 31, 2019) ............................................... 6, 14

*Orr v. Bank of Am., NT & SA*,
    285 F.3d 764 (9th Cir. 2002) ................................................................ 6, 7, 15

*Peone v. Regulus Stud Mills, Inc.*,
    744 P.2d 102 (Idaho 1987) ............................................................................ 11

*Rhodes v. Cty. of Darlington, S.C.*,
    833 F. Supp. 1163 (D.S.C. 1992)……………………..…………………………………17

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ......................................................................... 6

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036 (9th Cir. 2003) ......................................................................... 6

*Schneider v. Cty. of San Diego*,

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT       - vi

285 F.3d 784 (9th Cir. 2002) ................................................................................. 13

*Steel Co. v. Citizens for Better Environment*,
523 U.S. 83 (1998) .............................................................................................. 5

*Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*,
435 P.3d 489 (2019) ........................................................................................... 16
*Triton Energy Corp. v. Square D Co.*,
68 F.3d 1216 (9th Cir. 1995) ................................................................................ 7

*United States v. Orleans*,
425 U.S. 807 (1976) ................................................................................. 7, 8, 9, 10

*Vallier v. Jet Propulsion Lab*,
120 F. Supp. 2d 887 (C.D. Cal. 2000) .................................................................. 10

*Vallier v. Jet Propulsion Lab*,
23 F.Appx. 803 (9th Cir. 2001) ............................................................................ 10

*Vickers v. United States*,
228 F.3d 944 (9th Cir. 2000) ................................................................................ 10

*Waste Mgmt. of Alameda County, Inc. v. East Bay Regional Park Dist.*,
135 F. Supp. 2d 1071 (N.D. Cal. 2001) ................................................................ 17

*Weinberg v. Whatcom Cty.*,
241 F.3d 746 (9th Cir. 2001) ............................................................. 12, 13, 14, 15

*Western Greenhouses v. United States*,
878 F. Supp. 917 (N.D. Tex. 1995) ....................................................................... 5

*Will v. United States*,
60 F.3d 656 (9th Cir. 1995) ................................................................................... 9

*Wood v. City of San Diego*,
678 F.3d 1075 (9th Cir. 2012) ............................................................................... 5

<u>Statutes</u>

28 U.S.C. § 2671 ......................................................................................... 1, 7, 10

28 U.S.C. § 2679(a) ............................................................................................. 1

28 U.S.C. §§ 1346(b)(1) .................................................................................. 7, 10

42 U.S.C. 9607(a)(4)(A) ...................................................................................... 17

42 U.S.C. § 9607(a) .................................................................................................. 16, 17

42 U.S.C. § 9607(a)(4)(B) ............................................................................................. 17

42 U.S.C. § 9607(f)(1) .................................................................................................... 16


## Rules

Fed. R. Civ. P. 12(h)(3) ................................................................................................... 5

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 5

Fed. R. Civ. P. 56(c) ........................................................................................................ 7

Fed. R. Civ. P. 56(a) ........................................................................................................ 6

Fed. R. Civ. P. 56(c)(1)(A) & (B) ................................................................................... 6

## Federal Regulations

40 C.F.R. § 141.62(b)(5) ............................................................................................... 18

40 C.F.R. § 258.2 ........................................................................................................... 18

40 C.F.R. § 261.24 ........................................................................................................... 3

40 C.F.R. § 262.11 ........................................................................................................... 5

40 C.F.R § 261.24(b) ..................................................................................................... 18

40 CFR Parts 260-272 ...................................................................................................... 3

45 Fed. Reg. 72,024, 72,026 (Oct. 30, 1980) .................................................................. 5

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

### LIST OF EXHIBITS

1. Excerpts of Contract FA4897-16-C-3009 between the Air Force and ProTech

2. Memorandum from Eric Nagel, Contracting Officer, Air Force to Chad Diamond, ProTech Coatings, Inc., *Designation of Government Personnel for Contract FA4897-16-C-3009, Repair CRU Flooring Bldg. 206 & 1335* (Oct. 18, 2016)

3. Memorandum from Eric Nagel, Contracting Officer, Air Force to Chad Diamond, ProTech Coatings, Inc., *Designation of Contracting Officer Representative (COR) for Contract FA4897-16-C-3009, Repair CRU Flooring Bldg. 206 & 1335* (Oct. 18, 2016)

4. Memorandum from Cindy Dixon, Contracting Officer, Air Force to Chad Diamond, ProTech Coatings, Inc., *Solicitation FA4897-16-B-0003, CRU Floor Repaid B206 & B1335, Bid Verification* (Aug. 19, 2016)

5. Letter from Chad Diamond, ProTech Coatings, Inc., to Cindy Dixon, Contracting Officer, Air Force, *Solicitation FA4897-16-B-0003, CRU Floor Repaid B206 & B1335, Bid Verification Response* (Aug. 19, 2016)

6. Memorandum from Eric Nagel, Contracting Officer, Air Force to Chad Diamond, ProTech Coatings, Inc., *Superintendence by Contractor for Contract FA4897-16-C-3009, Repair CRU Flooring Bldg. 206 & 1335* (Oct. 18, 2016)

7. Memorandum from Eric Nagel, Contracting Officer, Air Force to Chad Diamond, ProTech Coatings, Inc., *Notice to Proceed for Contract FA4897-16-C-3009, Repair CRU Flooring Bldg. 206 & 1335* (Nov. 28, 2016)

8. December 21, 2016 Emails Between Eric Nagel, Contracting Officer, Air Force and Scott Carey, Project Manager, ProTech Coatings, Inc.

9. March 1 and 2, 2017 Emails Between Eric Nagel, Contracting Officer, Air Force and Scott Carey, Project Manager, ProTech Coatings, Inc.

10. Excerpts of AGEISS, Mountain Home Air Force Base Chromium Waste Remedial Evaluation Report (July 7, 2017)

11. Letter from Albert Crawshaw, Waste and Remediation Manager, IDEQ to Paula Jo Brown, Chief, Installation Management Flight, Air Force (July 20, 2017)

12. Letter from Natalie Creed, Hazardous Waste Unit Manager, IDEQ to Paula Jo Brown, Chief, Installation Management Flight, Air Force and Chad Diamond, Vice President, ProTech Coatings, Inc. (Aug. 20, 2018) and Consent Order

13. Excerpt of Expert Report of Remy J.-C. Hennet (June 2019)

14. Excerpt of Plaintiff's June 18, 2019 Responses to Defendant United States Air Force's First Set of Requests for Admission

15. Excerpt of Defendant ProTech Coatings, Inc.'s August 2, 2019 Responses to Defendant Snake River Rubbish, LLC's First Set of Interrogatories

16. Excerpt of Idaho Waste Systems, Inc.'s Simco Road Regional Landfill Operating Plan Update (December 2015)

17. Excerpt of Plaintiff's June 18, 2019 Responses to Defendant United States Air Force's First Set of Interrogatories

18. Excerpts of Court Filings in *Yarbrough v. Idaho Waste Systems, Inc. et al.*, cv-2016-558 (District Court of the Fourth Judicial District of the State of Idaho)

19. Excerpts of Rule 30(b)(6) Deposition of Plaintiff (Aug. 6, 2019)

20. Excerpts of Deposition of Thomas Knight (Aug. 7, 2019)

21. Excerpt of Idaho Waste Services, Inc., January 2019 Leachate Quality Monitoring Event Report Simco Road Regional Landfill (Mar. 2019)

## LIST OF DECLARATIONS

1. Eric Nagel, Contracting Office, Air Force

2. Shawn Young, Construction Inspector, Air Force

3. Paula Jo Brown, Installation Management Division Chief, Air Force

4. Dr. Remy J.-C. Hennet, S.S. Papadopulos & Associates, Inc.

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT            - x

## INTRODUCTION

In 2016, the United States Air Force hired a contractor—ProTech Coatings, Inc. ("ProTech")—to renovate the flooring in three buildings on the Mountain Home Air Force Base ("Project"). Contrary to the parties' contract, ProTech failed to properly test the waste generated from the Project before having it disposed of in Plaintiff's landfill ("Landfill"). Plaintiff has filed suit against the Air Force,[1] its general contractor ProTech, and a subcontractor, Snake River Rubbish, LLC ("Snake River"), alleging that the defendants are jointly liable for tort damages and Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") response costs that Plaintiff has incurred or will incur because some of the Project waste was hazardous, and the Landfill is not licensed to accept hazardous waste.

For three reasons, the Court should dismiss all of Plaintiff's claims against the Air Force. First, this Court lacks subject matter jurisdiction over Plaintiff's tort claims (Counts 1–4) because the Federal Tort Claims Act ("FTCA")—Plaintiff's exclusive means for asserting its tort claims against the United States—does not waive sovereign immunity for claims stemming from the conduct of independent contractors, such as ProTech and Snake River. Second, and in the alternative, Plaintiff's FTCA claims for diminution in value damages and certain contractor expenses are unsubstantiated and should be dismissed on summary judgment. Third, the Court should grant summary judgment in favor of the Air Force as to Plaintiff's CERCLA claims (Counts 5–6) because Plaintiff has not satisfied its burden to establish a prima facie case of CERCLA liability.

---

[1] The Amended Complaint does not name the United States as a defendant. The United States is the only appropriate defendant in FTCA actions. 28 U.S.C. § 2679(a); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984). The Court need not, however, determine whether to permit Plaintiff to amend the caption to name the United States because Plaintiff's tort claims are jurisdictionally barred by the FTCA's independent contractor provision. *See* 28 U.S.C. § 2671.

FACTS [2]

I.    **The Terms and Performance of the Contract**

In September 2016, the Air Force hired a general contractor—ProTech—for one project: to remove and replace existing flooring with a chemical resistant urethane coating in Buildings 205, 206, and 1335 on Mountain Home Air Force Base ("Mountain Home"). The Air Force entered into a contract with ProTech ("Contract") to perform the Project for $190,379.00.[3] Declaration of Eric Nagel ("Nagel Decl.") ¶¶ 4–9.

As the general contractor, ProTech—and not the Air Force—physically controlled the day-to-day performance of the Project, including: (1) supplying the equipment and materials for the work; (2) selecting, hiring, paying, and supervising its Project employees; and (3) selecting, contracting with, and paying Snake River to transport Project waste to the Landfill. Declaration of Shawn Young ("Young Decl.") ¶¶ 3, 5–14; Exh. 15 at 9 (ProTech explains how it selected Snake River). The Air Force did not transport the waste to the Landfill, dump the waste in the Landfill, or pay the costs of transport or disposal. Exh. 20 at 41:8-24; Exh. 19 at 85:12-19.

The Contract's terms also dictated that ProTech controlled the Project's day-to-day performance, including provisions stating: (1) ProTech "shall [] be responsible for all materials delivered and work performed until completion and acceptance of the entire work . . . .;" (2) ProTech "shall directly superintend the work or assign and have on the work[site] a competent superintendent . . . . ;" and (3) ProTech was required to investigate site conditions, including "conditions bearing upon . . . disposal." Nagel Decl. ¶¶ 21, 22, 24 (a)–(b) ("The Government

---

[2] As required by Local Rule 7.1(b), the Air Force separately submits a corresponding Statement of Materials Facts pertaining to its summary judgment arguments.

[3] This project spanned two contracts. Nagel Decl. ¶¶ 5–8. The contract at issue is Contract Number FA4897-16-C-3009 for Buildings 1335 and 206, which is excerpted as Exhibit 1.

assumes no responsibility for any conclusions or interpretations made by [ProTech] based on the information made available by the Government").

The Contract also required ProTech to comply with all applicable laws during the Project,[4] including those regarding waste characterization (including conducting a Toxicity Characteristic Leaching Procedure ("TCLP") test[5]), transportation, and disposal, such as:

(1) "The Contractor is responsible for complying with all current Air Force, local, state, and federal laws and regulations regarding protection of the environment and resources . . . . Nothing in this specification section is intended to relieve or exempt the Contractor from the responsibility to comply with all applicable local, state, or federal environmental statute, rules and regulations. In the event of conflicting requirements, the Project Manager will specify which one to follow." *Id.* ¶ 28(a).

(2) "For disposal of construction/demolition materials, the Contractor shall characterize the waste using Toxicity Characteristic Leaching Procedures (TCLP) to determine if the waste is hazardous or solid waste." *Id.* ¶ 28(d).

(3) "All material, whether hazardous or non-hazardous shall be disposed of in accordance with laws and provisions and Federal, State, or local regulations. Ensure waste is properly characterized. The result of each waste characterization (TCLP for RCRA materials) will dictate disposal requirements." *Id.* ¶ 27(b).

(4) "Waste blast material must be . . . submitted for TCLP analysis, and stored at the project site until analysis has been completed to determine proper disposal. Contractor is responsible for the cost associated with obtaining the laboratory analysis, and obtaining copies of the laboratory analysis reports. Analysis shall include TCLP of the RCRA 8 metals." *Id.* ¶ 27(a).[6]

---

[4] *Id.* ¶ 22 ("The Contractor shall . . . comply[] with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of work.").

[5] Under the Resource Conservation and Recovery Act ("RCRA"), waste must be tested to determine whether it can be disposed of in a solid waste landfill, such as the Landfill, or whether it must be disposed of at a hazardous waste facility. Waste can be deemed hazardous in several ways, including the metal content of the waste exceeding certain thresholds. *See* 40 C.F.R. § 261.24. The RCRA test for evaluating a waste's metals content is known as the TCLP test. *Id.*

[6] *See also id.* ¶ 28(b) ("Contractor operations shall be in compliance with [RCRA] 40 CFR Parts 260–272, and Idaho Rules and Standards for Hazardous Waste (IDAPA 58.01.05) at all times."); *id.* ¶ 28(c) ("The Contractor shall be responsible for transportation and disposal of all hazardous waste off [Mountain Home].").

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT                                    - 3

ProTech also agreed to "hold and save the Government, its officers and agents, free and harmless from liability of any nature occasioned by [ProTech's] performance," and to "be responsible for all damages . . . that occur as a result of [its] fault or negligence." *Id.* ¶¶ 22–23.

## II.    ProTech Confirmed It Would Adhere to the Contract Terms

In addition to the Contract language, the Air Force repeatedly reminded ProTech of its Contract obligations. First, prior to the Contract award, ProTech confirmed to the Air Force that it "understands the full extent of the requirements and workload as stated in" the Contract. Nagel Decl. ¶¶ 29–32. Second, after the Air Force awarded the Contract, ProTech signed a Notice to Proceed that reiterated that "[a]ll work shall be accomplished in strict accordance with the [C]ontract's terms, conditions, plans, and specifications." *Id.* ¶¶ 36–40. Third, before ProTech had disposed of any Project waste, the Air Force reminded ProTech that the Contract "specifications require laboratory analysis to include TCLP of the RCRA 8 metals." *Id.* ¶¶ 41–43.

## III.   Project Waste Disposal at the Landfill Occurred Before ProTech Did a TCLP Test

Despite these reminders and the Contract's terms, ProTech directed its subcontractor— Snake River—to transport Project waste to the Landfill for disposal on February 8, 2017, prior to performing a TCLP test. *Id.* ¶¶44–45. The Landfill is a RCRA subtitle D landfill, which limits the acceptance of waste to municipal solid wastes and other non-hazardous wastes. First Am. Compl. ("FAC") ¶¶ 4, 9. On or around March 7, 2017, ProTech informed the Air Force of the TCLP results on samples of the Project waste that indicated that the samples from Building 1335 exceeded the RCRA hazardous waste threshold for chromium, which could trigger the RCRA requirements for disposal at a hazardous waste facility.[7] Nagel Decl. ¶ 46.

---

[7] The Air Force did not sample this waste and therefore cannot attest to whether the samples are representative or otherwise properly collected or analyzed. The Air Force reserves any and all arguments with respect to this and any other results from samples collected by ProTech.

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT                                    - 4

A day later, the Air Force notified the Idaho Department of Environmental Quality ("IDEQ") that the Project waste had been disposed of in the Landfill. FAC ¶ 15; Declaration of Paula Jo Brown ("Brown Decl.") ¶¶ 3–6. IDEQ determined that the Project waste could remain in the Landfill, including because "the nature and quantity of the waste is not expected to adversely affect" the Landfill's components "if left in place." Brown Decl. ¶¶ 14–18.[8]

## STANDARD OF REVIEW

### I.    Motion to Dismiss, Fed. R. Civ. P. 12(h)(3)

The United States Air Force moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3).[9] "'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998) (citation omitted). A party can raise the defense of lack of subject matter jurisdiction at any time because this defense "cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (citing Fed. R. Civ. P. 12(h)(3)). The burden of proof on a motion to

---

[8] IDEQ also imposed a $3,200 joint fine on ProTech and the Air Force (but not Plaintiff) related to waste characterization, Brown Decl. ¶¶ 19–21, because, under RCRA, both are considered generators of the waste, 45 Fed. Reg. 72,024, 72,026 (Oct. 30, 1980), and as such are strictly liable for waste characterization prior to disposal, 40 C.F.R. § 262.11. However, "[t]he [FTCA] does not waive the sovereign immunity of the United States with regard to strict liability claims. . . The [FTCA] requires a negligent act." *Western Greenhouses v. United States*, 878 F. Supp. 917, 929 (N.D. Tex. 1995) (citing *Laird v. Nelms*, 406 U.S. 797, 801-03 (1972)).

[9] "When analyzing a motion to dismiss brought pursuant to Rule 12(h)(3), as in the instant case, courts apply the same standards for a motion brought under Rule 12(b)(1)." *Gillespie v. Travelscape LLC*, No. C13-0622 RSM, 2014 WL 4243706, at *1 (W.D. Wash. Aug. 26, 2014) (citing *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012)); *see also Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3d Cir. 1992) ("The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.").

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT                                      - 5

dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Here, the United States asserts a factual motion to dismiss Plaintiff's tort claims against the Air Force for lack of subject matter jurisdiction. FAC ¶¶ 18–40 (Counts 1–4). In such a factual challenge, "[t]he district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," "[t]he court need not presume the truthfulness of the plaintiff's allegations," and plaintiff "'must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).

## II.    <u>Motion for Summary Judgment, Fed. R. Civ. P. 56</u>

Summary judgment is appropriate where a party can show that, as to any part of any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact." *Oldcastle Precast, Inc. v. Concrete Accessories of Georgia, Inc.,* 2019 WL 403865, at *5 (D. Idaho Jan. 31, 2019) (Winmill, J.) (citing Rule 56(c)(1)(A) & (B)). "If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist." *Id.* In doing so, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts," *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003), on which the factfinder "could reasonably find for the [non-moving party]," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Orr v. Bank of Am., NT &*

*SA*, 285 F.3d 764, 773 (9th Cir. 2002) (the court "can only consider admissible evidence in ruling

on a motion for summary judgment"). "The mere existence of a scintilla of evidence in support

of the nonmoving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68

F.3d 1216, 1221 (9th Cir. 1995). Neither are "mere allegation and speculation," *Nelson v. Pima

Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996), nor "[f]actual disputes that are irrelevant or

unnecessary," *Anderson*, 477 U.S. at 248. In the end, Rule 56 "mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## ARGUMENT

For three reasons, the Court should dismiss all of Plaintiff's claims against the Air Force.

First, this Court lacks subject matter jurisdiction over Plaintiff's FTCA claims (Counts 1–4)

because these claims challenge the conduct of independent contractors, and the FTCA does not

waive sovereign immunity for such challenged conduct. Second and in the alternative, the Court

should dismiss on summary judgment Plaintiff's FTCA claims for diminution in value and

certain contractor expenses because they are unsubstantiated. Third, the Court should dismiss on

summary judgment the remaining CERCLA claims (Counts 5–6) because Plaintiff has failed to

establish a prima facie claim for cost recovery under CERCLA.

## I.    The FTCA's Independent Contractor Provision Deprives this Court of Subject Matter Jurisdiction over Plaintiffs' FTCA Claims (Counts 1–4)

The United States "can be sued only to the extent that it has waived sovereign immunity."

*United States v. Orleans*, 425 U.S. 807, 814 (1976). The FTCA provides a limited waiver of

sovereign immunity for certain acts or omissions of an "employee of the Government," which

expressly excludes "any contractor with the United States." 28 U.S.C. §§ 1346(b)(1); 2671. Thus,

the FTCA does not waive the United States' sovereign immunity for contractors' acts or omissions. *Logue v. United States*, 412 U.S. 521, 525–28 (1973); *Orleans*, 425 U.S. at 813–14. "Courts are not free to abrogate the [independent contractor] exemption . . . regardless of whether there is a good reason for so doing." *Autery v. United States*, 424 F.3d 944, 957 (9th Cir. 2005) (alternation in the original and citation omitted).

When assessing whether the independent contractor provision deprives the Court of subject matter jurisdiction, courts have analyzed (1) vicarious liability—whether "the United States has declined to exercise control over the day-to-day operations of its contractor;" and (2) direct liability—"whether Plaintiffs have alleged a separate nondelegable or undelegated duty, which the United States could be held directly liable for breaching." *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016). As detailed below, the Air Force is not vicariously or directly liable in tort in this case, and therefore this Court lacks jurisdiction over Plaintiff's FTCA claims.

### A. ProTech Controlled the Day-to-Day Operations of the Project, and Thus Was an Independent Contractor for Whose Conduct the United States is Not Liable

ProTech was an independent contractor and not an Air Force employee. Under the FTCA, the primary indicator of independent contractor status is whether the government "'control[s] the detailed physical performance of the contractor.'" *Orleans*, 425 U.S. at 814 (quoting *Logue*, 412 U.S. at 528). "'[T]here must be substantial supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee.'" *Autery*, 424 F.3d at 957 (quoting *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1987)); *Orleans*, 425 U.S. at 815–16 (contractors "are responsible . . . for compliance with the specifications of a contract . . . , but they are largely free to select the means of its implementation").

"Contractual provisions directing detailed performance generally do not abrogate the contractor exception." *Autery*, 424 F.3d at 957. As the Ninth Circuit has explained:

> The United States may "fix specific and precise conditions to implement federal objectives" without becoming liable for an independent contractor's negligence. *Orleans*, 425 U.S. at 816 . . . . "[D]etailed regulations and inspections are [not] evidence of an employee relationship." *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1987) . . . . That is, "the ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees." *Id.*

*Autery*, 424 F.3d at 957 (alterations in the original).

ProTech was an independent contractor because the Air Force did not provide "substantial supervision of [its] day-to-day operations." *Id.* The Air Force did not hire, select, pay, or dictate the precise working hours of ProTech's employees. Young Decl. ¶¶ 8, 12. Even when the Air Force Construction Inspector (Shawn Young) periodically visited the job site (as he was responsible for inspecting ProTech's performance of the Project), he only spoke with ProTech's Project Manager (or onsite supervisor), and did not instruct or speak with ProTech's nonsupervisory employees. *Id.* ¶¶ 3, 5–7. The Air Force also did not select the waste transporter (Snake River), pay Snake River, or pay Plaintiff to dispose of the waste. *Id.* ¶¶ 13–14; Exh. 20. 41:8-24; Exh. 19. 85:12-19. ProTech also provided all of the equipment and materials necessary for the Project. Young Decl. ¶¶ 9–10; *see, e.g.*, *Will v. United States*, 60 F.3d 656, 659 (9th Cir. 1995) (affirming application of the independent contractor provision in part because the subcontractor "supplied their own tools and equipment including a truck, a tractor and chain saws" and the subcontractor was "hired by the lumber company, not by the [United States]").

The Contract further demonstrates that ProTech was an independent contractor. First, the Contract required ProTech to, "[a]t all times during the performance of this contract and until the work is completed and accepted," "directly superintend the work or assign and have on the work[site] a competent superintendent." Nagel Decl. ¶ 21. ProTech's assumption of "all damages to persons or property that occur as a result of [ProTech]'s fault or negligence," *id.* ¶ 22, and agreement to indemnify and hold harmless the Air Force "from liability of any nature occasioned

by the [ProTech]'s performance," *id.* at ¶ 23, further indicate that ProTech was an independent

contractor, *e.g.*, *Fraser v. United States*, 490 F. Supp. 2d 302, 310 (E.D.N.Y. 2007) ("Courts

consider the . . . assumption of liability by, the contractor as a general indication that the

contractor was in fact independent and not acting as an agent of the Government.") (citation

omitted); *accord Diaz v. U.S. Postal Serv.*, 2003 WL 21767530, at *2 (S.D.N.Y July 31, 2003).

The Contract also required ProTech to comply with all applicable laws, including characterizing

the Project waste (through a RCRA TCLP test), so that ProTech could determine the proper form

of transport and disposal of the Project waste. Nagel Decl. ¶ 28(c)–(d). Responsibility for

complying with all applicable laws, however, did not transform ProTech into an Air Force

employee. *See Autery*, 424 F.3d at 957 ("The United States may 'fix specific and precise

conditions to implement federal objectives' without becoming liable for an independent

contractor's negligence." (quoting *Orleans*, 425 U.S. at 816)); *Vallier v. Jet Propulsion Lab.*, 120

F. Supp. 2d 887, 912 (C.D. Cal. 2000) (Caltech was an independent contractor when "the

government delegated responsibility for waste disposal . . . , including compliance with federal,

state and local laws"), *aff'd,* 23 F. App'x 803 (9th Cir. 2001).

Here, because ProTech was an independent contractor, the Air Force cannot be held

vicariously liable for ProTech's conduct, including disposing of the Project waste at the Landfill

prior to conducting a TCLP test. 28 U.S.C. §§ 1346(b)(1), 2671.

### B. Plaintiff Has Not Alleged Direct Liability, and, Even if It Had, None Exists in this Case Because All Applicable Duties Were Delegated To ProTech

Plaintiff has not "alleged a separate nondelegable or undelegated duty, which the United

States could be held directly liable for breaching." *Edison*, 822 F.3d at 518.[10] Instead, Plaintiff

---

[10] Plaintiff also does not allege that the Air Force was negligent in delegating the Project to
ProTech—a claim that would be barred by the FTCA's discretionary function exception. *See
Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that

has asserted its tort claims jointly against all defendants and has not asserted any claims against the Air Force beyond the scope of the Air Force's relationship with ProTech. *Compare id.* ("Plaintiffs seek to hold the United States directly liable . . . outside the scope of its relationship with GEO/MTC."), *with* FAC ¶¶ 12–14 (alleging that the Air Force acted through ProTech and Snake River Rubbish) & ¶¶ 18–40 (asserting tort claims against all defendants). That is because, as Plaintiff has acknowledged, the Air Force did not transport, dump, or pay to dump the waste at the Landfill. Exh. 20, 41:8–24; Exh. 19, 85:12–19. Because Plaintiff has not alleged that the Air Force breached a separate duty, this Court should dismiss Plaintiff's FTCA claims pursuant to the FTCA's independent contractor provision without any further analysis.

Even assuming that Plaintiff had alleged such a separate duty,[11] the Court still must dismiss Plaintiff's FTCA claims. First, the Contract delegated to ProTech the full responsibility for complying with all applicable laws and regulations, including properly characterizing and disposing of Project waste. Nagel Decl. ¶ 28(c) – (d); *Autery*, 424 F.3d at 959 ("We need not reach [the direct duty argument] because . . . the contractual provisions plainly provide that [the duty] was delegated . . . to contractors."). Second, Idaho law would not impose a direct duty on the Air Force, as the owner of the facility and employer of a contractor because encountering hazardous material in a construction demolition project is not a "special risk, peculiar to the work to be done . . . ." *Peone v. Regulus Stud Mills, Inc.*, 744 P.2d 102, 104 & 107 (Idaho 1987) (falling dead tree was not a "'special risk, peculiar to'" logging that would impose direct

---

decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.").

[11] The separate duty "cannot preempt the FTCA if [it] would impose strict liability on the Government." *Lentz v. United States Air Force*, 2018 WL 3416993, at *4 (D. Ariz., 2018); *Laird v. Nelms*, 406 U.S. 797, 801–03 (1972) (precluding strict liability claims under the FTCA).

liability).[12] Third, Plaintiff's alleged damages arise from ProTech's failure to follow the Contract and applicable law—not the nature of the Project. *Ek v. Herrington*, 939 F.2d 839, 844 (9th Cir. 1991) ("a risk that would not arise, but for the independent contractor's negligence" does not impose direct liability because an employer "is justified in presuming that a careful contractor will not create that risk and, therefore, has no nondelegable duty to prevent it").

For these reasons, this Court lacks subject matter jurisdiction over Plaintiff's FTCA claims (Counts 1–4) and these claims should be dismissed.

**II.    In the Alternative, the Court Should Dismiss Plaintiff's Tort Claims For Diminution in Value and Consultant Expenses**

In the alternative, the Court should dismiss on summary judgment Plaintiff's alleged tort claims for $5,300 for Project Delivery Group, LLC's ("PDG") and for diminution in value to the Landfill because Plaintiff has offered no admissible evidence in support of these claims. Since "plaintiffs 'must provide evidence such that the [Court] is not left to speculation or guesswork in determining the amount of damages to award,'" "[s]ummary judgment is appropriate where [plaintiffs] have no expert witnesses or designated documents providing competent evidence from which a [Court] could fairly estimate damages." *Weinberg v. Whatcom Cty.*, 241 F.3d 746, 751 (9th Cir. 2001) (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988)).

### A.  Plaintiff Has Provided No Evidence of PDG's Costs

The Court should dismiss on summary judgment Plaintiff's claim for PDG's costs because Plaintiff has neither produced any documentation of these costs, nor was able to explain

---

[12] *See also Kane v. J.R. Simplot Co.*, 60 F.3d 688, 693 (10th Cir. 1995) ("while working from a scaffold is dangerous, the risk of falling from a scaffold is a risk commonly encountered and therefore not a 'peculiar risk'") (applying Idaho law).

during depositions the work PDG performed (much less how Plaintiff determined that the costs were $5,300). Statement of Facts ("SOF") ¶¶ 37–41; *Weinberg*, 241 F.3d at 751.

### B. The Court Should Dismiss Plaintiff's Diminution in Value Claim

For the two independent reasons set forth below, the Court also should dismiss on summary judgment Plaintiff's tort claims for diminution in value to the Landfill.

### 1. Plaintiff Did Not Suffer Any Losses Due to Diminution in Value

Plaintiff has not demonstrated that it suffered any diminution in value that would entitle it to compensatory damages. Compensatory damages "are defined as damages that 'will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury.'" *Curtis v. Firth*, 850 P.2d 749, 760 (Idaho 1993) (quoting *Black's Law Dictionary* 352 (5th ed. 1983)). "This is consistent with their purpose: 'to return the plaintiff to the position he or she would have occupied had the harm not occurred.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 872 (9th Cir. 2017) (quoting *Schneider v. Cty. of San Diego*, 285 F.3d 784, 795 (9th Cir. 2002)); *Weinberg*, 241 F.3d at 751 ("Proof of damages is required because 'the purpose of a tort action is to compensate for loss sustained and to restore the plaintiff to his former position.'") (citation omitted).

In this case, if the Project waste had not been disposed of at the Landfill, the available evidence indicates that the Landfill still would have been foreclosed upon, sold in October 2018, and sold for the same amount—*i.e.*, Plaintiff would be in the same position today vis-à-vis the sale of the Landfill. The sale was the result of a foreclosure proceeding that Mr. Yarbrough commenced in Idaho state court in June 2016—before the Project commenced—against Plaintiff for breaching loan agreements. SOF ¶¶ 51–60. At the ensuing October 2018 foreclosure sale, Mr. Yarbrough was the sole and winning bidder at $8,215,210.76. *Id.* ¶¶ 56–58. Mr. Yarbrough

testified that he bid this amount because it was approximately the amount of his judgment against Plaintiff and not based on any other factors, much less the Project waste. *Id.* ¶¶ 59–60.

Plaintiff has produced no evidence that the Project waste caused or affected the October 2018 sale of the Landfill. Since Plaintiff is in the same position today vis-à-vis the sale of the Landfill as it would have been without the Project waste, Plaintiff is not entitled to compensatory damages for diminution in value to the Landfill. *Curtis*, 850 P.2d at 760 (Compensatory damages "are defined as damages that 'will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury'") (citation omitted); *accord Weinberg*, 241 F.3d at 751; *Bayer*, 861 F.3d at 872.

### 2. Plaintiff Also Has Failed to Offer Any Admissible Evidence of Diminution in Value

Even if Plaintiff were entitled to such compensatory damages, Plaintiff has failed to produce any admissible evidence to support that claim, and therefore the Court should dismiss the claim on summary judgment. *Oldcastle Precast*, 2019 WL 403865 at *5. Plaintiff has failed to disclose any experts regarding diminution in value, despite stating it would do so and moving this Court to extend the expert deadline. ECF No. 51; SOF ¶¶ 42–43. Plaintiff also has failed to provide any documents regarding how the Project waste allegedly decreased the value of the Landfill. SOF ¶ 44. "[S]ummary judgment is appropriate [because] [Plaintiff] ha[s] no expert witnesses or designated documents providing competent evidence from which [the Court] could fairly estimate damages." *Weinberg*, 241 F.3d at 751 (quoting *McGlinchy*, 845 F.2d at 808)).

Moreover, Plaintiff's deposition testimony does not provide admissible evidence sufficient to survive summary judgment because Plaintiff merely repeated—without explanation—unidentified individuals' supposed valuations and, when pressed, Plaintiff relented that it was "not sure about the specific dollar amount." SOF ¶¶ 45–48. Prior to this concession,

Plaintiff testified that it believes the Project waste decreased the Landfill's value by "a minimum of [$]1,000,000 to $2,000,000," or "a minimum of $2,000,000" because that is how much two companies (whose identities Plaintiff refused to disclose) reportedly told Plaintiff they reduced their purchase offers because of the Project waste. *Id.* ¶ 45.[13] But such inadmissible hearsay statements cannot be considered in ruling on this motion for summary judgment. *Orr*, 285 F.3d at 773. Although Idaho law allows a former owner to testify as to a property's value,[14] "[w]hat the owner is not allowed to do is merely repeat another person's valuation," *Cunningham v. Masterwear Corp.*, 569 F.3d 673, 676 (7th Cir. 2009) (affirming dismissal on summary judgment and applying Indiana law, which also has "been interpreted to permit a property owner to testify about the value of his property"); *United States v. 68.94 Acres of Land, More or Less, Situate in Kent Cty., State of Del.*, 918 F.2d 389, 398 (3d Cir. 1990) ("the rationale which justifies landowners' opinion testimony—*i.e.*, their special knowledge of the property—does not extend to the mere repetition of another's assessment of the property's value."). That, however, is precisely what Plaintiff seeks to do here by passing off the supposed opinions of two undisclosed entities as its opinion of the diminution in value to the Landfill. This case also demonstrates why courts impose this prohibition: Plaintiff could not explain the bases for these valuations, conceded that the sources "are liars," and has not provided a basis for evaluating these valuations or whether they are anything more than speculation or negotiating posturing. SOF ¶¶ 42–50; *Weinberg*, 241 F.3d at 751 ("[P]laintiffs 'must provide evidence such that the [Court] is not left

---

[13] Plaintiff also has not produced documents regarding these discussions or identified these buyers in its disclosures. *Id.* ¶¶ 48- 49. The only other rationale provided for Plaintiff's diminution in value claim was "common sense." *Id.* ¶ 50. Plaintiff did not explain, however, how "common sense" justified the damages ranges proffered. *Id.*

[14] *Adams v. United States*, 823 F. Supp. 2d 1074, 1085 (D. Idaho 2011) (Winmill, C.J.).

to speculation or guesswork in determining the amount of damages to award'" (citation

omitted).[15]

Here, Plaintiff bears the burden of proof, but elected not to provide an expert report or

produce any documents substantiating its diminution in value claim, and instead decided to rely

exclusively on undocumented, unverifiable, and inadmissible hearsay discussions—none of

which are admissible evidence of diminution of value.

### III.    The Court Should Enter Summary Judgment for the Air Force on Plaintiff's CERCLA Claims Because Plaintiff Has Failed to Make a Prima Facie Showing that Its Claimed Costs Were Necessary.

Congress enacted CERCLA to "promote the timely cleanup of hazardous waste sites and

to ensure that the costs of such cleanup efforts were borne by those responsible for the

contamination." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 595, 602 (2009)

(internal quotation marks and citation omitted). CERCLA "provide[s] a federal cause of action to

recover costs of cleanup from culpable entities but not a federal cause of action for personal

injury or property damage." *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014).

To establish a prima facie case of CERCLA liability in a cost recovery action under

CERCLA section 107(a), or a contribution action under CERCLA section 113(f),[16] a private

---

[15] Plaintiff's unsupported valuations also stand in stark contrast to property owners' testimony that courts have permitted. *E.g.*, *Adams*, 823 F. Supp. 2d at 1085–86 (former owner testified that he was personally familiar with recent sales in the area "for around $4000 to $4500 per acre"); *Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*, 435 P.3d 489, 503–04 (2019) (affirming admission of owner's testimony that was based upon annual revenue, an accepted multiplier, and corroborated by other testimony).

[16] Section 107(a) of CERCLA provides a cause of action to recover response costs from a potentially liable party incurred responding to the release or threatened release of a hazardous substance from a facility. 42 U.S.C. § 9607(a). Section 113(f) of CERCLA provides a cause of action to "seek contribution from any [] person who is liable . . . under Section 107(a) [of CERCLA]." 42 U.S.C. § 9613(f)(1). Liability under Section 107(a) thus is a prerequisite to a contribution claim under Section 113(f). *Id.*

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT                                    - 16

party seeking recovery must establish: (1) that "hazardous substances" were disposed of at a "facility"; (2) that there has been a "release" or "threatened release" of hazardous substances from the facility into the environment; (3) that the release or threatened release has required or will require the expenditure of "necessary costs of response" incurred consistent with the National Contingency Plan; and (4) that the defendant falls within one of four categories of responsible parties under CERCLA section 107(a). 42 U.S.C. § 9607(a); *City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1002–03 (9th Cir. 2010).[17] There is insufficient evidence for Plaintiff to make a prima facie showing on the third element here: Plaintiff's claimed costs were not "necessary" because the disposed waste did not pose an actual and real threat to human health and the environment. There is no genuine issue of material fact regarding necessity; therefore, the Air Force is not liable under CERCLA and this Court should enter summary judgment for the Air Force on these claims.[18]

Costs are necessary only if they are incurred in response to "an actual and real threat to human health and the environment." *City of Colton*, 614 F.3d at 1002–03 (*quoting Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 871 (9th Cir. 2001) (en banc)). Whether costs incurred were "necessary" is a question of fact based on the totality of the objective circumstances. *See Carson Harbor*, 270 F.3d at 874; *Cadillac Fairview*, 840 F.2d at 691. The

---

[17] A private party plaintiff can recover only "necessary costs of response . . . consistent with the national contingency plan."  42 U.S.C. § 9607(a)(4)(B); *City of Colton*, 614 F.3d at 1002–03.  By contrast, the United States, states and Indian tribes can recover "*all costs . . . not inconsistent with* the national contingency plan."  42 U.S.C. 9607(a)(4)(A) (emphasis added).

[18] Several categories of relief Plaintiff seeks do not qualify as response costs under CERCLA Section 107 at all: injunctive relief, *Cadillac Fairview v. Dow Chem. Co.*, 840 F.2d 691, 697 (9th Cir. 1988)*;* litigation expenses, *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994); and diminution of value, *see, e.g.*, *Rhodes v. Cty. of Darlington, S.C.*, 833 F. Supp. 1163, 1181 (D.S.C. 1992); *Artesian Water Co. v. Gov't of New Castle Cty.*, 851 F.2d 643, 648 (3d Cir. 1988) (CERCLA does not allow recovery of "economic losses").

private party plaintiff bears the burden to show that costs incurred are necessary. *Waste Mgmt. of Alameda Cnty., Inc. v. East Bay Reg'l Park Dist.*, 135 F. Supp. 2d 1071, 1099 (N.D. Cal. 2001) (citing *Cadillac Fairview*, 840 F.2d at 695).

Plaintiff has not produced any evidence that there was an actual and real threat to human health and the environment from ProTech's disposal of waste in the landfill. The Landfill was constructed with protective liners at the bottom of waste cells to prevent waste from entering the environment, and has a leachate[19] collection and recovery system that pumps collected leachate into storage tanks for waste management. SOF ¶ 5. There is no evidence that the Landfill's liner or leachate system was compromised or otherwise unable to operate as designed. *Id.* ¶ 6. Sampling data from groundwater confirm that these protective measures are working properly; groundwater monitoring reports from 2008 to 2019 have consistently found that the Landfill is not impacting groundwater. *Id.* ¶¶ 31–32.

The circumstances present in the Landfill after waste disposal all support a finding that there was no real or actual threat to human health or the environment. Although Plaintiff alleges that chromium was sent to the Landfill on February 8, 2017, chromium was already present in the Landfill from multiple prior disposals, including disposal of 1200 pounds of waste-containing chromium in 2012. SOF ¶¶ 8–9. As part of a voluntary consent order with IDEQ following the 2012 disposal, Plaintiff was allowed to leave the chromium contaminated waste in place. SOF ¶ 10. That result is unsurprising because neither the chromium from the 2012 disposal nor the February 8, 2017, disposal even had any noticeable effect on the Landfill's leachate, which, again, is collected and not released into the environment.[20] The chromium

---

[19] "*Leachate* means a liquid that has passed through or emerged from solid waste and contains soluble, suspended, or miscible materials removed from such waste." 40 C.F.R. § 258.2.

[20] The Project waste disposed in Cell 2A of the Landfill comprised just 0.014%—less than two

concentrations in leachate from all chromium present in the landfill have never exceeded the level for a regulatory hazardous waste under RCRA (0.5 mg/L, 40 C.F.R § 261.24(b)) or the lower Maximum Contaminant Level ("MCL") under the Safe Drinking Water Act (0.1 mg/L, 40 C.F.R. § 141.62(b)(5)). SOF ¶¶ 32(a), 34. In the January 2019 monitoring period, there were no detections of chromium in leachate samples above the method reporting limit of 0.03 mg/L, again significantly below the MCL. SOF ¶ 35. Chromium concentrations in leachate in the past five years have been negligible to non-detectable. *Id.* ¶ 36.

Based on these objective circumstances at the landfill, the Air Force's technical consultant concluded that leaving the waste in place would pose no "unacceptable risk to human health and the environment." SOF ¶ 22. The United States' expert found that the "chromium concentration in the landfill leachate from Cell 2 is too low to threaten or harm groundwater" and "chromium from waste material has no measureable effect on the chemical composition of the landfill leachate from Cell 2." SOF ¶ 32(c). IDEQ found that the waste should remain in place and has not required Plaintiff to take any remedial action. SOF ¶¶ 25–27.

Plaintiff has not produced any evidence that either rebuts these facts or establishes a genuine issue of material fact. Rather, Plaintiff contends that it incurred costs in responding to the disposal based not on the conditions at the Landfill, but on an alleged recommendation from an IDEQ employee during a phone call on or about March 9, 2017. Exh. 19, 196:21–201:22. That contention is unavailing. The subjective intent motivating a response to the release of hazardous substances is irrelevant to the objective determination as to whether response costs are necessary. *See Carson Harbor*, 270 F.3d at 872. While it is true that an agency cleanup order is relevant to necessity, *id.*, IDEQ never issued an administrative order to Plaintiff. Exh. 19,

---

hundredths of one percent—of the total cell volume. SOF ¶ 21.

196:21–201:22; Exh. 14 Nos. 14, 16. And, IDEQ's early indication to the Air Force that the disposal would require a response was based not on whether the waste posed an actual and real threat, but rather on a technical violation of RCRA: placing waste in a landfill that is not permitted to receive the chromium content. Brown Decl. ¶¶ 7, 9; SOF ¶¶ 17–18. RCRA, in contrast to CERCLA, does not allow for private recovery of response costs. *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484–85 (1996).

The requirement that response costs be "necessary" recognizes that CERCLA was designed to facilitate hazardous waste cleanups and "was not intended to compensate third parties for damage resulting from hazardous substance discharge." *Artesian Water Co.*, 851 F.2d at 648 (citation omitted); *see also Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1535 (10th Cir. 1992). "Congress did not intend for CERCLA, a narrowly drawn federal remedy, to make inured parties whole or to be a general vehicle for toxic tort actions." *Artesian Water Co. v. Government of New Castle Cty.*, 659 F. Supp. 1269, 1299 (D. Del. 1987). There is no evidence that the nature and quantity of the waste ProTech disposed was an actual and real threat to human health and the environment based on the actual conditions in the landfill. This Court should enter summary judgment for the Air Force on Plaintiff's CERCLA claims.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's FTCA claims for lack of subject matter jurisdiction, and in the alternative, enter summary judgment on certain tort claims. In addition, because Plaintiff cannot establish a prima facie case for cost recovery under CERLCA, and there is no genuine issue of material fact regarding those claims, the Court should enter summary judgment for the Air Force on Plaintiff's CERCLA claims.

DATED this 6th day of September 2019.    Respectfully submitted,

J. PATRICK GLYNN
Director, Torts Branch
Environmental Tort Litigation Section

CHRISTINA M. FALK
Assistant Director, Torts Branch
Environmental Tort Litigation Section

ERIC REY
D.C. Bar No. 988615
Trial Attorney, Torts Branch
Environmental Tort Litigation Section


*/s/ Danielle L. Sgro*
DANIELLE L. SGRO
Pennsylvania Bar No. 313749
Trial Attorney, Torts Branch
Environmental Tort Litigation Section
United States Department of Justice
175 N Street NE, Ste. 11-226
Washington, D.C. 20002
E-mail: danielle.l.sgro@usdoj.gov
Telephone: (202) 616-4226
Fax: (202) 616-4473

DAVID MITCHELL
Illinois Bar No. 6302250
United States Department of Justice
Environmental Defense Section

*/s/ Sheila Baynes*
SHEILA BAYNES
Montana Bar No. 37722843
United States Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004
(202) 514-2617
sheila.baynes@usdoj.gov

UNITED STATES AIR FORCE'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT                    - 21

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 6, 2019, a copy of the foregoing was filed via the U.S. District Court's CM\ECF system and served through the CM\ECF system upon:

Richard A. Cummings
Rcummings@cummingslawidaho.com

William Ghiorso
bill@ghiorsolaw.com

Tyler J. Anderson
Tanderson@hawleytroxell.com

Dana L. Hofstetter
Dhofstetter@hawleytroxell.com

Tug Worst
worst@magicvalleylaw.com

Kelly Anderson
Kha@magicvalleylaw.com


           */s/ Danielle L. Sgro*
           DANIELLE L. SGRO