DANIELLE L. SGRO, Pennsylvania Bar No. 313749
ERIC REY, D.C. Bar No. 988615
Trial Attorneys
U.S. Department of Justice, Civil Division,
Environmental Torts Litigation Section
175 N Street N.E.
Washington, DC 20001
Telephone:  202-616-4226
Fax:  202-616-4473
Email:  danielle.l.sgro@usdoj.gov

SHEILA BAYNES, Montana Bar No. 37722843
DAVID MITCHELL, Illinois Bar No. 6302250
Trial Attorneys
U.S. Department of Justice,
Environmental and Natural Resources Division,
Environmental Defense Section

Attorneys for Defendant United States Air Force

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO WASTE SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>THE UNITED STATES AIR FORCE; PROTECH COATINGS, INC.; and SNAKE RIVER RUBBISH, LLC<br><br>    Defendants. | Civil No. 1:18-cv-229-BLW<br><br>**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT UNITED STATES AIR FORCE'S MOTION FOR SUMMARY JUDGMENT.** |

    Pursuant to L.R. 7.1(b)(1), the United States Air Force hereby submits its Statement of Undisputed Material Facts In Support of Its Motion for Summary Judgment filed contemporaneously herewith.[1]

---

[1] The United States Air Force filed a consolidated motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(h)(3) and for summary judgment under Rule 56. This Statement of

STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT
UNITED STATES AIR FORCE'S MOTION FOR SUMMARY JUDGMENT      - 1

### I. THE SIMCO REGIONAL LANDFILL

1. The Simco Regional Landfill ("Landfill") is a Resource Conservation and Recovery Act ("RCRA") Subtitle D permitted landfill located at 16415 NW Waste Site Drive, Mayfield, Idaho, 83716. Exh. 16 (Idaho Waste Systems, Inc., Simco Road Regional Landfill Operating Plan Update (Dec. 2015)) at IDEQ013681.

2. The Landfill has been owned and operated by Plaintiff, Idaho Waste Systems, Inc., from 1999 to present day. *Id.*

3. The Landfill is divided into separate cells that receive waste in sequential order. *Id.* at IDEQ013689.

4. Each cell contains a protective liner at the bottom of the cell to prevent waste from the Landfill from entering the environment as required by RCRA Subtitle D regulations for municipal landfills. 40 C.F.R. § 258.40; Exh. 16 at IDEQ013707.

5. The Landfill has a leachate collection and recovery system that pumps and collects leachate for management as required by RCRA Subtitle D regulations for municipal landfills. 40 C.F.R. § 258.40; Exh. 16 at IDEQ013707.

6. There is no evidence that the protective liner in the Landfill has been compromised or has been unable to operate as designed.

7. There is no evidence that leachate from the Landfill has affected groundwater from 2008 to present day. Exh. 13 (Report of Dr. Remy J.-C. Hennet) at 9; Hennet Decl. ¶¶ 4–6.

8. Prior to February 2017, chromium-containing waste was disposed in the Landfill on multiple occasions. Exh. 14 at 2:27–3:36 (Plaintiff's June 18, 2019 Responses to Defendant United States Air Force's First Set of Requests for Admission).

---

Undisputed Material Facts includes those facts supporting the motion for summary judgment.

9. In 2012, 1200 pounds of chromium-containing waste was disposed of in the Landfill. *Id.* at 3:16-25.

10. The Idaho Department of Environmental Quality ("IDEQ") allowed Plaintiff to leave the 1200 pounds of chromium-containing waste in place as part of a 2012 Voluntary Consent Order. *Id.*

## II.   PROTECH'S FEBRUARY 7, 2017 DISPOSAL OF CHROMIUM-CONTAINING WASTE IN THE LANDFILL

11. ProTech Coatings, Inc. ("ProTech") hired Snake River Rubbish, LLC to transport waste generated as part of ProTech's contract with the United States Air Force to recoat floors at three Mountain Home Air Force Base buildings ("Project"). Exh. 15 (ProTech's August 2, 2019 Responses to Snake River Rubbish, LLC's First Set of Interrogatories) at 9.

12. On February 8, 2017, Snake River Rubbish transported Project waste from Mountain Home Air Force Base and disposed of such waste in Cell 2A of the Landfill.

13. As part of the contract, ProTech was required to test all waste generated during the Project prior to disposal, including performing a Toxicity Characteristic Leaching Procedure ("TCLP") test pursuant to RCRA. *E.g.*, Nagel Decl. ¶¶ 27–29.

14. Project waste was disposed of at the Landfill before ProTech received the TCLP test results. Nagel Decl. ¶ 44.

15. Subsequent laboratory analysis found chromium in concentrations above the TCLP hazardous waste threshold in the samples collected from Building 1335 debris as part of the Project. Brown Decl. ¶ 5.

16. Thereafter, the Air Force notified IDEQ of the testing results. *Id.* ¶ 6.

17. In response, IDEQ instructed the Air Force to contact Plaintiff and schedule removal of the chromium-containing waste because the Landfill, as a non-hazardous waste facility, was not authorized or permitted to receive RCRA-regulated hazardous waste. *Id.* ¶ 7.

18. There is no evidence that IDEQ conducted any investigation to determine whether the chromium-containing waste was an actual and real threat to human health and the environment based on the conditions in the Landfill prior to instructing the Air Force to schedule the immediate removal of the waste.

19. On or about March 8, 2017, the Air Force notified Plaintiff of the testing results. Exh. 19 (Plaintiff 30(b)(6) Deposition) at 195:10–196:20.

### III.  AGEISS, INC.'s RISK EVALUATION AND IDEQ'S LEAVE IN PLACE DETERMINATION

20. In response to IDEQ's instructions, the United States Air Force hired an expert firm, AGEISS, Inc., to evaluate and prepare a report regarding how best to address the disposal of the Project waste at the Landfill. Brown Decl. ¶¶ 8–12.

21. AGEISS found that the total Project waste disposed of in Cell 2A of the Landfill was .014% of the total cell volume. Exh. 10 (AGEISS, Inc., Mountain Home Air Force Base Chromium Waste Remedial Evaluation Report (July 7, 2017)) at USAF1_00246.

22. AGEISS found that leaving the waste in place would pose no "unacceptable risk to human health and the environment." *Id.* at USAF1_00255.

23. AGEISS provided a final report dated July 7, 2017, which recommended that the waste not be removed from the Landfill. Brown Decl. ¶¶ 10–12.

24. The Air Force sent the AGEISS final report to IDEQ on July 7, 2017. Brown Decl. ¶ 13.

25. IDEQ responded by letter dated July 20, 2017, stating that: "Based upon [IDEQ]'s review of the available information and recommendation for approval by the Central District

Health Department, [IDEQ] hereby concurs with [the United States Air Force]'s recommendation that the subject waste at the . . . Landfill be left in place." Exh. 11 (Letter from Albert Crawshaw, IDEQ, to Paula Jo Brown, Air Force (July 20, 2017) at 1.

26. IDEQ's July 20, 2017 letter further states that:

> The basis for this determination is: 1) the low probability of locating the dispersed waste; 2) the nature and quantity of the waste is not expected to adversely affect the integrity of the liner or leachate collection system if left in place; 3) the potential health and safety concerns posed by retrieval activities and the wastes with which the waste is now co-mingled; and 4) the potential compromise of the liner is a greater risk to human health and the environment than allowing the waste to remain in place based on landfill design and construction.

Exh. 11 at 2.

27. Since IDEQ sent the July 20, 2017 letter, the Project waste has not been removed from the Landfill. Exh. 19 at 176:21–177:4; Exh. 14 (Plaintiff's June 18, 2019 Responses to Defendant United States Air Force's First Set of Requests for Admission) at 3:38–42.

28. Plaintiff did not receive a notice of violation related to the Project waste. Exh. 19. 179:20–22.

29. Plaintiff is not a party to a consent decree related to the Project waste. *Id.* at 179:23–25.

30. Plaintiff did not pay IDEQ any fine or penalty related to the Project waste. Exh. 14 at 4:15–20.

### IV. THE PROJECT WASTE HAS NOT ADVERSELY AFFECTED THE ENVIRONMENT OR THE LANDFILL LEACHATE

31. The United States Air Force's expert in the fields of geochemistry and hydrogeology— Dr. Remy J.-C. Hennet—reviewed the facts related to the Project waste being disposed of at the Landfill, available groundwater and landfill leachate [2] data for Cell 2 of the

---

[2] "*Leachate* means a liquid that has passed through or emerged from solid waste and contains

STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT
UNITED STATES AIR FORCE'S MOTION FOR SUMMARY JUDGMENT - 5

Landfill (which is where the waste was disposed), and other instances in which hazardous waste had been disposed of at the Landfill and IDEQ allowed such waste to remain in place. Exh. 13 (Report of Dr. Remy J.-C. Hennet) at 2–5; Hennet Decl. ¶¶ 4–6.

32. Dr. Hennet provided the following four opinions, which are further explained in his expert report:

   a. "Opinion 1. Chromium in the landfill leachate from Cell 2 is substantially lower than both the Maximum Contaminant Level (MCL) for drinking water and the RCRA limit for hazardous waste."

   b. "Opinion 2. Chromium concentration in the landfill leachate from Cell 2 is too low to threaten or harm groundwater quality beneath the landfill."

   c. "Opinion 3. Chromium from the waste material has no measurable effect on the chemical composition of the landfill leachate from Cell 2."

   d. "Opinion 4. The decision by IDEQ to allow the chromium-containing waste to remain in Cell 2 is reasonable."

   Exh. 13 (Report of Dr. Remy J.-C. Hennet) at 6–12.

33. The chromium concentrations in leachate from all chromium present in the Landfill have never exceeded either the Maximum Contaminant Level under the Safe Drinking Water Act (0.1 mg/L) or the TCLP threshold for being considered RCRA hazardous waste (5 mg/L). *Id.* at 7–8.

34. According to Plaintiff's January 2019 leachate monitoring report, "[t]here were no detections of total chromium above the method reporting limit of 0.03 mg/L in the leachate samples collected from Cell 1 and Cell 2 [of the Landfill]." Exh. 21 (Project Delivery Group, January 2019 Leachate Quality Monitoring Report Simco Road Regional Landfill (Mar. 2019)) at USAF1_00549.

---

soluble, suspended, or miscible materials removed from such waste." 40 C.F.R. § 258.2

STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT
UNITED STATES AIR FORCE'S MOTION FOR SUMMARY JUDGMENT                - 6

35. According to Plaintiff's January 2019 leachate monitoring report, the "concentration of total chromium [in the Landfill leachate over the last 5-year period] have been negligible to non-detect." *Id.*

36. Plaintiff acknowledged that the Cell 2 leachate sampling data taken after the Project waste was disposed of at the Landfill "did not show any chromium hexavalent C6." Exh. 19 at 102:10–103:2.

## V.  PLAINTIFF'S ALLEGED TORT DAMAGES

### A.  Alleged Costs for Project Delivery Group's Services

37. Plaintiff's alleged tort damages in this case include "Project Delivery Group LLC" – "Mitigation and environmental risk evaluation - $5,300." Exh. 17 (Plaintiff's June 18, 2019 Responses to Defendant United States Air Force's First Set of Interrogatories) at 8.

38. Plaintiff has not produced any documentation substantiating these alleged costs, such as an invoice, scope of work, or proof of payment.

39. Plaintiff testified that it could not recall what work Project Delivery Group performed related to the Project waste. Exh. 19 at 103:11–23.

40. Plaintiff's general manager also testified that he could not recall whether Project Delivery Group performed any work related to the Project waste. Exh. 20 at 60:12–16.

41. Plaintiff testified that it did not know the basis for claiming $5,300 in damages related to Project Delivery Group. Exh. 19 at 103:20–23.

### B.  Alleged Diminution in Value

42. Plaintiff's alleged tort damages in this case also include "Reduction of value" of the Landfill in the amount of (as Plaintiff stated in its June 18, 2019 interrogatory responses)

"TBD upon review by expert witness." Exh. 17 (Plaintiff's June 18, 2019 Responses to Defendant United States Air Force's First Set of Interrogatories) at 8.

43. Plaintiff has not disclosed any expert witnesses.

44. Plaintiff has not produced any documents regarding how much the Project waste decreased the value of the Landfill.

45. During Plaintiff's subsequent Rule 30(b)(6) deposition, Plaintiff testified that it believes the Project Waste decreased the value of the Landfill by: (1) "a minimum of [$]1,000,000 to $2,000,000," Exh. 19 at 37:21–22, (2) "a minimum of $2,000,000," *id.* at 184:4–8, and (3) ultimately that Plaintiff was "not sure about the exact specific dollar amount," *id.* at 189:4–5.

46. Plaintiff testified that these valuations were based on its discussions with unnamed entities that are interested in purchasing the Landfill. *Id.* at 184:4–21; 32:16–33:4; 37:15–22.

47. Plaintiff also testified that "[b]uyers are liars." *Id.* at 37:15–18.

48. Plaintiff has not disclosed the identities of these companies or their representatives, including as part of Plaintiff's Rule 26(a)(1) initial disclosures.

49. Plaintiff has not produced documents regarding its alleged discussions or negotiations with these companies.

50. Plaintiff also testified that its diminution in value claim was based on "common sense," but did not explain how "common sense" resulted in the values set forth in Paragraph 45 above. *Id.* at 188:25–191:7.

## VI. FORECLOSURE AND SALE OF THE LANDFILL

51. In June 2016, Jack Yarbrough filed suit against Plaintiff and its guarantors in Idaho state court, alleging that Plaintiff breached various loan agreements with Mr. Yarbrough. Exh. 18 at 3–8.

52. In his complaint, Mr. Yarbrough sought a judgment in the amount of $7,967,597.78 (plus additional costs), to foreclose upon his security interest in the Landfill, and to compel a sheriff's sale of the Landfill. *Id.* at 8.

53. On February 27, 2017, Mr. Yarbrough moved for entry of final judgment against Plaintiff. *Id.* at 10–12.

54. In May 2018, a court granted Mr. Yarbrough's motion for judgment against Plaintiff "in the amount of $7,967,597.78, plus post-judgment interest on that amount, accruing at the legal rate, until paid in full." *Id.* at 16.

55. The May 2018 judgment granted Mr. Yarbrough's request to foreclose upon his security interest in the Landfill, instructing the sheriff to sell the Landfill and apply the proceeds to the amount due to Mr. Yarbrough (minus the sheriff's costs). *Id.*

56. On October 30, 2018, the sheriff auctioned the Landfill. *Id.* at 20.

57. Mr. Yarbrough placed the only and winning bid at the auction. Exh. 19 at 30:22–25.

58. Mr. Yarbrough's bid was $8,215,210.76. *Id.* at 27:18–28:4; Exh. 18 at 21.

59. Mr. Yarbrough testified that he bid this amount because it was approximately the amount of his judgment (plus interest and costs) against Plaintiff. Exh. 19 at 27:18–28:4; 30:10–31:8.

60. Mr. Yarbrough could not recall any other factors that influenced his bid amount. *Id.* at 31:9–19.

DATED this 6th day of September 2019.

                                                         Respectfully submitted,

                                                         J. PATRICK GLYNN
                                                         Director, Torts Branch
                                                         Environmental Tort Litigation Section

                                                         CHRISTINA M. FALK
                                                         Assistant Director, Torts Branch
                                                         Environmental Tort Litigation Section

                                                         ERIC REY
                                                         D.C. Bar No. 988615
                                                         Trial Attorney, Torts Branch
                                                         Environmental Tort Litigation Section

                                                         */s/ Danielle L. Sgro*
                                                         DANIELLE L. SGRO
                                                         P.A. Bar No. 313749
                                                         Trial Attorney, Torts Branch
                                                         Environmental Tort Litigation Section
                                                         United States Department of Justice
                                                         175 N Street NE, Ste. 11-226
                                                         Washington, D.C. 20002
                                                         E-mail:  danielle.l.sgro@usdoj.gov
                                                         Telephone:  (202) 616-4226
                                                         Fax:  (202) 616-4473

                                                         DAVID MITCHELL
                                                         Illinois Bar No. 6302250
                                                         United States Department of Justice
                                                         Environmental Defense Section

                                                         */s/ Sheila Baynes*
                                                         SHEILA BAYNES
                                                         Montana Bar No. 37722843
                                                         United States Department of Justice
                                                         Environmental Defense Section
                                                         P.O. Box 7611
                                                         Washington, D.C. 20004
                                                         (202) 514-2617/0165
                                                         sheila.baynes@usdoj.gov

**CERTIFICATE OF SERVICE**

      This is to certify that on September 6, 2019, a copy of the foregoing was filed via the U.S. District Court's CM\ECF system and served through the CM\ECF system upon:

Richard A. Cummings
Rcummings@cummingslawidaho.com

William Ghiorso
bill@ghiorsolaw.com

Tyler J. Anderson
Tanderson@hawleytroxell.com

Dana L. Hofstetter
Dhofstetter@hawleytroxell.com

Jamie K. Moon
Jmoon@hawleytroxell.com

Tug Worst
worst@magicvalleylaw.com

Kelly Anderson
Kha@magicvalleylaw.com

                                                                        */s/ Danielle Sgro*
                                                                         Danielle Sgro